Horace Barry **JORDAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 46583.

Court of Criminal Appeals of Texas.

Oct. 31, 1973.

Rehearing Denied Nov. 14, 1973.

Charles L. Caperton, Kerry P. FitzGerald, Dallas, for appellant.

Henry Wade, Dist. Atty., and W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

The appellant was convicted of robbery. Punishment was assessed by the jury at fifty years' imprisonment.

■ Appellant's first ground of error urges that the trial court failed to submit to the jury a sufficiently specific charge on alibi. Appellant's mother and stepfather testified that appellant was at their home in Louisiana at the time the offense occurred. Appellant requested an instruction which specifically included this evidence, or, in the alternative, " . . . a charge on the affirmative defense applying the law of alibi." In his charge, the court defined the defense of alibi and instructed the jury that if the evidence raised a reasonable doubt in their minds as to the presence of appellant at the time and place the offense was committed, if any was committed, they should acquit the appellant. This instruction was sufficient. See Dukes v. State, 161 Tex.Cr.R. 423, 277 S.W.2d 710 (1955); Welch v. State, 143 Tex.Cr.R. 529, 154 S.W.2d 248 (1941).

■ Appellant next urges that the court erred in failing to give the jury a limiting instruction regarding certain evidence of an extraneous offense.

A witness for the State testified that on the day the robbery occurred appellant had entered the store where she worked and had purchased from her two jumpsuits similar to the suits worn by the men who committed the robbery. She testified that she remembered this sale in particular because on the following day she was contacted by a detective who told her that the credit card, with which appellant had paid for the suits, was stolen.

Counsel for the appellant objected to this testimony, and the court responded by instructing the jury to disregard both the question and answer and not to consider them for any purpose. In these circumstances, the instruction to disregard was sufficient. See Crawford v. State, 480 S. W.2d 724 (Tex.Cr.App.1972).

In a related ground of error appellant argues that the trial court should have granted his motion for mistrial, which was raised following the testimony relating to the "stolen" credit card. See discussion of ground of error number two, supra. Under the record, the court did not err in re-

fusing to grant the motion. See Phenix v. State, 488 S.W.2d 759 (Tex.Cr.App.1972); Jenkins v. State, 484 S.W.2d 900 (Tex.Cr. App.1972).

■ The third ground of error urges that appellant was prejudiced when the prosecutor, during the final argument at the guilt-innocence stage, went outside the record to inform the jury that appellant had previously served time in prison.

The transcript of the final arguments reflects the following statements:

"Prosecutor: . . . And then we'll determine what the proper punishment in this case is, and I can't think of . . .

"Defense Counsel: Your Honor, I'm going to object to that because he knows that that's not proper.

"The Court: What's that? .

"Defense Counsel: About what the proper punishment in this case is. It's an automatic punishment.

"The Defendant: It's an automatic life sentence is what it is.

"Prosecutor: If it's an automatic life sentence it's because he's deserved it by his past convictions and past criminal conduct . . . It's an automatic life sentence because he's been in the Texas Department of Corrections here, he's been in the penitentiary . . . "

The remarks of the prosecuting attorney were invited by defense counsel's explanation of his general objection ("It's an automatic punishment") and by the unnecessary statement of the appellant, ("It's an automatic life sentence is what it is.")

■ Appellant's fifth ground of error complains of the court's failure to sustain his objection to testimony by appellant's stepfather, that he had first met the appellant when appellant was in prison. Appellant argues that this was evidence of an extraneous offense which was inadmissible for any purpose. The record reflects that the testimony was given twice before the objection was made, and that immediately after the objection was overruled the witness was asked whether he knew the reason for appellant's being in prison, to which no objection was made. The record further reflects that another witness, the appellant's mother, was asked if she visited appellant when he was in Angola (the location of the prison), to which no objection was made. Additionally, the statements made during final argument (see discussion of ground of error number three, supra) made the jury aware, prior to the beginning of their deliberations, that appellant had been in prison. The record thus shows that the same evidence was repeatedly presented without objection. No reversible error occurred. See White v. State, 486 S.W.2d 377 (Tex.Cr.App.1972); Crestfield v. State, 471 S.W.2d 50 (Tex. Cr.App.1971); and East v. State, 420 S. W.2d 414 (Tex.Cr.App.1967).

Ground of error number six has been withdrawn by appellant's amended brief.

■ Appellant's seventh ground of error urges that the in-court identification of the appellant by two eyewitnesses was tainted because of the photographic identification procedure used by the police. The trial judge, following the procedure outlined in Martinez v. State, 437 S.W.2d 842 (Tex. Cr.App.1969), included with the record his written findings of fact. In this document, he found that the identification process used by the police was not impermissibly suggestive and that it had not resulted in a tainted in-court identification. The record supports his conclusions. See Nash v. State, 486 S.W.2d 561 (Tex.Cr.App.1972).

■ Appellant's eighth ground of error, which is related to ground of error number seven, argues that the trial court should have ordered a pre-trial "line-up" in which appellant would have been physically exposed to the witnesses prior to their in-court identification of him. Appellant's

real complaint, as embodied in his arguments in support of ground of error number eight, seems to be that he was singled out for the witnesses because he sat with his attorney at the defense counsel's table in the courtroom. We have concluded that this fact does not create any substantial prejudice to appellant's rights. The reason for a defendant's being seated with his defense counsel is not to maintain a situation conducive to his being easily identified by witnesses, but, rather, it is to enable him to consult with and assist his attorney in the conduct of his defense. The fact that he is visible in this position is far less injurious to him than the act of preventing him from consulting with his counsel during trial would be. Additionally, the accuracy of the witnesses' identification can be tested on cross-examination, and any taint arising from a defendant's presence with his attorney can be thereby exposed. Appellant's claim is without merit.

The appellant's ninth ground of error is contained in a pro se brief filed with this Court. We have examined this document and find that it reflects no error.

The judgment is affirmed.

ONION, Presiding Judge (dissenting).

The appellant was indicted for robbery by assault with a prior burglary conviction alleged for enhancement. See Article 62, Vernon's Ann.P.C. It appears from a written order in the record that the court sustained the appellant's motion to quash the indictment with regard to the enhancement portion due to faulty allegations.[1]

The appellant's defense was alibi. At the guilt stage of the trial and during the cross-examination of appellant's stepfather, one of the alibi witnesses, the following was elicited from the witness:

"Q Where did you meet him (appellant)?

"A He was in prison.

"Q What?

"A He was in prison.

"MR. CAPERTON: Your Honor, he knows about this and he's doing this for the purpose of prejudicing the members of the jury. I think it's inadmissible for any purpose and not proper cross examination and should be stricken from the record.

"THE COURT: Overrule your objection to it.

"Q (By prosecutor) You met him in Angola?[2]

"A. Yes, sir.

"Q And you know what he was in prison for?

"A Not offhand, no, sir. I never had heard what all charged were against him or anything. I never asked."

Subsequently, on cross-examination of appellant's mother, another alibi witness, she related she had visited the appellant in Angola.

Then during jury argument at the guilt stage of the trial where the only issue was the guilt or innocence of the appellant, State's counsel argued:

"If there's anything I can say about this case, it's that he should be found guilty just as quickly as he went in there and robbed those people, in about five minutes. And then we'll determine what the proper punishment in this case is, and I can't think of—

"MR. CAPERTON: Your Honor, I'm going to object to that because he knows that that's not proper.

---

1. The judgment indicates such action was taken upon written motion of the District Attorney. It does not appear that such action was taken until after the guilt stage of the trial.

2. Apparent reference to Angola, Louisiana.

"THE COURT: What's that?

"MR. CAPERTON: About what the proper punishment in this case is. It's an automatic punishment.

"THE DEFENDANT: It's an automatic life sentence is what it is.

"MR. ROLFE: If it's an automatic life sentence it's because he's deserved it by his past convictions and past criminal conduct, and he's over there hollering not guilty; it's an automatic life sentence and he's deserved it, and I tell you what, a life sentence is too light for this man, but we'll determine that in the next phase of the hearing.

"It's an automatic life sentence because he's been in the Texas Department of Corrections here, he's been in the penitentiary—

"MR. CAPERTON: Now, Your Honor, I will object. There certainly is no evidence of that.

"THE COURT: Overrule your objection, Mr. Caperton. I think you injected it into the trial.

"MR. ROLFE: I'm not going to take up any more of your time right now to determine whether or not this man is guilty. He's just as guilty as he sets (sic) there, and when he said something about Linda Foren and those people being down there, back there with the prosecutors who knew he was guilty, well, he didn't tell half the truth.

"I know he's guilty and I know a heck of a lot more about him. We're asking you right now to find him guilty of this robbery."

The majority concludes that the complained of argument was invited by appellant's personal statement and his counsel's reference to "automatic punishment." I cannot conclude the argument was invited thereby. The issue of punishment was not before the jury at the time,[3] and when the prosecutor sought to pursue this issue, he was met with an objection and the remarks followed. The prosecutor nevertheless then seized upon the remarks to continue to argue the then irrelevant issue of punishment urging that he deserved an automatic life sentence because "his past convictions and past criminal conduct, . . . because he's been in the Texas Department of Corrections, he's been in the penitentiary." While there was evidence, properly or improperly elicited, that appellant had been in prison in Angola, Louisiana, the balance of such argument was outside the record and not supported by the evidence. This was clearly not invited by a reference to automatic punishment. It was clearly improper and highly prejudicial, and it is to be noted that despite appellant's earlier objection the prosecutor concluded his argument with "I know he's guilty and I know a heck of a lot more about him." It is obvious that the prosecutor, by hook or crook, was injecting his unsworn personal knowledge into jury argument.

I would reverse without more.

ODOM, J., joins in this dissent.

3. Even if the enhancement portion had remained in the case (see footnote #1), the jury would not have assessed punishment if they had found he was one and the same person so previously convicted since the punishment is automatically assessed by law. See Article 62, Vernon's Ann.P.C.